**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAILY HARVEST, INC., | Case No:  18-cv-10464-LTS-OTW |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR CYBERSQUATTING, TRADEMARK INFRINGEMENT, TRADEMARK DILUTION, TORTIOUS INTERFERENCE AND UNJUST ENRICHMENT** |
| v. | |
| ENAMING.COM, LLC, TRACY FOGARTY, ASHANTIPLC LIMITED, SAVVY INVESTMENTS, LLC, and DOES 1-10, | |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Daily Harvest, Inc. (hereinafter, "Daily Harvest" or "Plaintiff"), brings this

Complaint against Defendants eNaming.com, LLC ("eNaming.com"), Tracy Fogarty, Savvy

Investments, LLC ("Savvy Investments"), and Ashantiplc Limited ("Ashantiplc" and,

collectively, "Defendants") and alleges as follows:

<u>**INTRODUCTION**</u>

1.      Plaintiff Daily Harvest, Inc. is a New York City-based, direct-to-consumer

business that has pioneered a wildly popular line of healthy "frozen cup" products sold under its

DAILY HARVEST® brand exclusively from its website www.daily-harvest.com.  Daily Harvest

brings this action to remedy Defendants' willful and deliberate misconduct, including

infringement of the DAILY HARVEST® trademark, cybersquatting, unjust enrichment, and

tortious interference with prospective economic advantage.

2.      Defendants are cybersquatters on the www.dailyharvest.com domain (which

omits the hyphen in Daily Harvest's address).  Defendants have requested that Daily Harvest pay

increasingly exorbitant sums for the hyphen-less domain.  In response to Daily Harvest's refusal

to pay these outrageous fees, Defendants have threatened harm to the goodwill of the brand and have now taken affirmative action to accomplish that.

3.     Daily Harvest only just discovered Defendants launched an online campaign to damage the brand by re-directing Daily Harvest customers who mistakenly visit www.dailyharvest.com (as opposed to www.daily-harvest.com) to gab.com and to donaldjtrump.com. gab.com is an extremist right-wing social media network filled with misogynistic, anti-Semitic and racist posts.  The networking site gained mainstream media attention when it was discovered that the Pittsburgh synagogue shooter used gab.com to post his anti-Semitic rants.  Defendants have created a "Daily Harvest" profile on gab.com and filled it with swastikas, assertions that former President and First Lady Obama are "proud to be in a same-sex marriage," and claims that "Feminism is a mental illness" – all with the caption that they have been "reposted" by "Daily Harvest."



4.      Defendants know that, as a direct-to-consumer business reaching consumers via its website, Daily Harvest's web domain, online presence and brand reputation are essential to its existence.  Consumers associate Daily Harvest with its brand and its website, where they shop for and purchase Daily Harvest products.  Defendants seek to destroy Daily Harvest's relationship and reputation with consumers who mistakenly visit Defendants' domain and are offended by the content Defendants posted under Daily Harvest's name.  Defendants' conduct infringes Daily Harvest's trademark and irreparably damages the Daily Harvest Brand.

5.      Daily Harvest accordingly brings this action to preserve the status quo and for preliminary and permanent injunctive relief, money damages, and expedited discovery to help remedy Defendants' ongoing violations of federal and New York state law.

## JURISDICTION AND VENUE

6.      The Court has subject matter jurisdiction over the Lanham Act claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331.  The Court has subject matter jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because they form part of the same case or controversy.

7.      The court has personal jurisdiction over Defendants because Defendants have committed tortious acts causing injury to Daily Harvest within New York and Defendants expect or should reasonably expect their acts to have consequences within the state and derive substantial revenue from interstate commerce.  *See* N.Y. Civ. Prac. Law § 302(a)(3)(ii).

8.      Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because Plaintiff is located in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.  Venue also is proper in this District because Defendants engaged in

wrongful, fraudulent, and/or tortious conduct alleged herein that they knew or should have known would cause harm to Daily Harvest, which is located in this District.

## PARTIES

9.      Plaintiff Daily Harvest, Inc., is a New York-based Delaware corporation founded by Rachel Drori with its principal place of business at 37 West 20th Street, New York, New York.

10.      Defendant eNaming.com, LLC, is a Delaware limited liability company with, upon information and belief, its principal place of business in Scottsdale, Arizona.

11.      Defendant Tracy Fogarty is the CEO and Founder of eNaming.com, LLC.

12.      Defendant Savvy Investments, LLC, is a Wyoming limited liability company with, upon information and belief, its principal place of business in Cheyenne, Wyoming.

13.      Defendant Ashantiplc Limited is an entity located in Hong Kong, HK that is the registrant of record of the www.dailyharvest.com domain according to ICANN's WHOIS database.

14.      On information and belief, Defendants Does 1-10 are individuals and/or entities who aided and abetted and/or helped facilitate the cybersquatting and trademark infringement described herein.  The true names and capacities of Defendants Does 1-10 are unknown to Daily Harvest at this time.

15.      Each of the Defendants aided and abetted, conspired with, acted as agents of, and participated with the other Defendants in the wrongful acts and course of conduct, or otherwise caused the damages sought herein and are responsible for the acts, occurrences and events alleged in this Complaint.

## STATEMENT OF FACTS

**A.      Plaintiff Daily Harvest**

16.      Daily Harvest was founded in 2014 by Rachel Drori with the goal of providing consumers with unprocessed foods that are easy to prepare, delicious and healthy.  Ms. Drori's vision was to open a new market of convenient and nutrient-packed meal options using frozen food technology to deliver meals directly to consumers.

17.      Frozen ingredients (vegetables, fruits, seasonings, and other ingredients), properly packaged and handled, provide substantially greater nutritional value than "fresh" ingredients, which often languish in warehouses and on supermarket shelves.  Further, emerging superfoods have amazing health benefits but suffer from limited availability, high price points, difficulty in dosing, and demand that outstrips supply.  Consumers desire all these attributes in their food but in a convenient format without the excessive processing and preservatives associated with traditional frozen meals.

18.      Ms. Drori began producing frozen smoothies in a commercial kitchen and hand-delivering them from her car while pregnant.

**B.      Daily Harvest's Investment Into its Novel Business Plan**

19.      The Daily Harvest team worked hard to create a seamless and easy-to-navigate direct-to-consumer service model.  Essential to this concept was a user-friendly online platform to enable consumers to visit and research the pre-portioned products that they were interested in. The consumer could build a box of harvest bowls, soups, overnight oats, chia parfaits, and lattes they would like to be delivered to their door and specify the date of delivery and frequency of recurring deliveries. Daily Harvest's website is www.daily-harvest.com.

20.      The result of this work was a revolutionary change from the highly-processed "frozen meals" historically found in supermarkets.  Paired with the development of suitable

packaging to enable frozen foods to be delivered by mail in an environmentally conscious format, Daily Harvest was a novel concept not available or seen in the market.

21.    Daily Harvest's direct-to-consumer model depends on a strong online presence and acute brand awareness, particularly among its target demographic.  Daily Harvest owns the DAILY HARVEST® trademark (U.S. Reg. No. 88035682), which it uses on all its goods and advertising materials.  Daily Harvest also uses social media platforms like Instagram and Facebook to connect with both new and repeat customers.

**C.    The Domain www.dailyharvest.com**

22.    Defendants' business is cybersquatting.  Like patent trolls, they seek to tax both entrepreneurs and consumers by charging brands and trademark owners for domain names that they themselves do not use for any valid business purpose.  Among cybersquatters, Defendants are particularly odious because they seek to extort payment by directing their victims' customers to hateful social networking sites – and shield themselves in anonymity while doing so.

23.    Defendant Ashantiplc and the Doe Defendants are the owners of www.dailyharvest.com and those acting in concert with them.

24.    Defendant Ashantiplc and the Doe Defendants have kept their identities secret by using privacy services and dealing with Daily Harvest through their sales agent, Defendants eNaming.com, LLC, and Tracy Fogarty.  None of the Doe Defendants' information appears in the public record of the registration for www.dailyharvest.com.  Until November 12, 2018, none of Defendant Ashantiplc's information appeared in the public record of the registration for www.dailyharvest.com.

25.    Instead, the name Savvy Investments appeared on the www.dailyharvest.com domain registration.

26.     Savvy Investments is a privacy service often used by cybersquatters.  Privacy services allow a domain owner to register the domain using the name of the privacy service, thereby keeping the true owner's identity secret.  When a privacy service is used, the domain owner's name is omitted from the public registration record.  Savvy Investments touts this ability to "shield your identity."[1]

27.     At certain times prior to October 2017, Defendant Ashantiplc and the Doe Defendants used the registrar fabulous.com to register www.dailyharvest.com.  Registrars act as intermediaries between top-level domain name registries and the public.  They contract with top-level domain name registries to offer domain name registration services to the public.  A registrar will, for a fee, register a domain with a registry.

28.     Using a privacy service to conceal their identity, Defendant Ashantiplc and the Doe Defendants registered www.dailyharvest.com with the registrar fabulous.com sometime in the past.  That registration with fabulous.com was renewed most recently on November 30, 2017.

29.     In the Fourth Quarter of 2017, the registrar Sea Wasp, LLC ("Sea Wasp") acquired the fabulous.com domain registration business.

30.     Following the acquisition, www.dailyharvest.com was re-registered with Sea Wasp.  All fabulous.com/Sea Wasp registrants entered into a new registration agreement with "Sea Wasp LLC, DBA as Fabulous" "effective 5/24/2018."[2]

31.     After its re-registration with Sea Wasp, Defendant Ashantiplc and the Doe Defendants began using Defendant Savvy Investments as a privacy shield.  Until November 12, 2018, the registration for www.dailyharvest.com reflected that the domain is registered by Savvy Investments, LLC Privacy ID# 815721 to Sea Wasp.

---

[1] *See* Savvy Investments' "Home" website page, accessible at http://privacy.co.com/.
[2] *See* Sea Wasp/Fabulous.com's "Terms of Service" website page, accessible at https://fabulous.com/terms.

**D.    Defendants' Attempt to Sell www.dailyharvest.com to Daily Harvest at Inflated Prices**

32.    The owner of www.dailyharvest.com has communicated with Daily Harvest through its broker and sales agent, Defendant Tracy Fogarty, CEO of Defendant eNaming.com, who has attempted to persuade Daily Harvest to purchase the domain.

33.    Defendants Fogarty and eNaming.com operate a domain name brokerage business by which they arrange the purchase and sale of domain names and charge a fifteen percent commission on each sale.

34.    Upon information and belief, Defendants Fogarty and/or eNaming.com, LLC, own and control the dailyharvest.com domain and/or have an interest in it.

35.    Defendants are not in the business of using domain names, including www.dailyharvest.com, for any valid business purpose.  Instead, they are in the business of squatting on and selling domain names for profit to legitimate businesses.  In the interim, Defendants often obtain referral fees by directing traffic from domain names they own to other sites.

36.    Defendants derive substantial revenue from buying and selling domain names in interstate and international commerce and from obtaining referral fees from directing traffic to websites in interstate and international commerce.  This includes revenue from goods and services rendered to New Yorkers, including via buying and selling domain names in transactions with New York entities and by supplying traffic to the websites of New York organizations.

37.    Beginning in February 2016, Defendant Fogarty and a representative of Daily Harvest have been engaged in off-and-on discussions in which Ms. Fogarty has attempted to persuade Daily Harvest to purchase the www.dailyharvest.domain for five-and six-figure sums.

38.     In February 2016, Defendants asked for $65,000 to $75,000. As Daily Harvest's business has grown, the amount requested has steadily increased.  In subsequent correspondence, Ms. Fogarty demanded $100,000, $115,000, and then $175,000, justifying the increases with the observation that Daily Harvest had "just raised money."

39.     During these conversations, Defendant Fogarty repeatedly referred to Daily Harvest, its current business prospects, and its success in obtaining funding.

40.     In their efforts to sell the www.dailyharvest.com domain to Daily Harvest, Defendants purposefully directed their efforts at Daily Harvest in New York City.  Defendant Fogarty, acting as CEO of Defendant eNaming, LLC and as the sales agent and broker for Defendant Ashantiplc and the Doe Defendants, was aware that she was negotiating with representatives of Daily Harvest and that Daily Harvest was located in New York City. Defendant Fogarty also knew that the Daily Harvest representative she was speaking to had a New York address and telephone number.  The emails Ms. Fogarty exchanged with Daily Harvest's representative identify his address as [xxx] East 25th Street, NY, NY 10010, and his phone number is on the 212 exchange.

41.     On August 21, 2018, Defendant Fogarty emailed the Daily Harvest representative and asked "to chat for a few minutes today or tomorrow."  The next day, Daily Harvest's representative responded, "is there a good time to call you this afternoon\ Jay Bhatti 212-300-[xxxx]," at which point Ms. Fogarty asked him to "give me a call."

42.     On the call, Defendant Fogarty stated that she did not understand why Daily Harvest would not purchase the www.dailyharvest.com domain.  She represented that there were "thousands" of visitors a day to www.dailyharvest.com who typed in the address themselves rather than being directed from another website or search engine.  Ms. Fogarty told the Daily

Harvest representative that she received many comments or requests asking about Daily Harvest and asking to buy products. After Daily Harvest's representative informed Ms. Fogarty that Daily Harvest would not offer anything near her asking price, she re-emphasized the organic traffic to the www.dailyharvest.com domain and asked for $170,000. The Daily Harvest representative said he would get back to Defendant Fogarty after speaking to Daily Harvest's founder.

43.     Upon calling Defendant Fogarty back, Daily Harvest's representative restated that Daily Harvest was sticking to its position. Defendant Fogarty again stated that she did not understand why Daily Harvest did not want the domain, noted that Daily Harvest had just raised money, and asserted that Daily Harvest would make the purchase price back from the organic web traffic to the www.dailyharvest.com domain. Daily Harvest's representative was not swayed, prompting Defendant Fogarty to threaten that the domain owner "might forward the site to an adult website," which "would not be a good look for Daily Harvest." Daily Harvest's representative informed Defendant Fogarty that any such maneuver would result in legal action.

44.     At this and prior times, Defendants had pointed the www.dailyharvest.com domain to a page on Defendant eNaming.com's website, https://enaming.com/exclusive/domain/dailyharvest.com/. That website advertised the www.dailyharvest.com domain for sale.

### E.     Defendants' Attempt to Extort Daily Harvest into Buying www.dailyharvest.com

45.     Defendants were not content with the fruits of their negotiations with Daily Harvest and decided to try extortion to obtain payment for their domain.

46. On November 2, 2018, Plaintiff discovered that www.dailyharvest.com was redirecting users to donaldjtrump.com, the campaign website of Donald J. Trump for President, Inc., which is headquartered at 725 Fifth Avenue, New York, NY 10022.

47. Defendants received referral fees in return for directing traffic to www.donaldjtrump.com.

48. The following week, Defendants upped the ante by directing traffic to an extremist right-wing social media network which came to the general public's attention days earlier because the Pittsburg Synagogue shooter had posted hateful and anti-Semitic posts on the network before carrying out his massacre.

49. Defendants caused www.dailyharvest.com to point to a page on gab.com titled Daily Harvest, which features a series of posts purporting to have been "reposted" by "Daily Harvest." Those include:







50.     Defendants have also reposted content under the Daily Harvest name that is directly at odds with Daily Harvest's brand identity of healthy, unprocessed foods:



51.     Defendants also began posting disparaging comments about Daily Harvest and its products:





52.     Most recently, Defendants targeted a Daily Harvest influencer when they screenshotted her Facebook post and again made disparaging comments about the Daily Harvest brand and products:



53.     These associations with extreme racist, anti-Semitic, and misogynistic hate speech are antithetical to Daily Harvest's carefully built brand.  Daily Harvest carefully cultivates a wholesome, healthy non-partisan image.

14

54.     Defendants knew and intended that this campaign would cause injury to Daily Harvest and its brand by associating Daily Harvest with hateful speech and damaging its relationship with sponsors, business partners, and influencers.  Defendants also knew that this injury would be felt in New York City, where Daily Harvest operates.

55.     Already, Daily Harvest's customers, potential customers, business partners, and potential business partners have raised questions about the material linked to on www.dailyharvest.com and asked why Daily Harvest is associated with this material.  Upon information and belief, many other potential customers of Daily Harvest have been turned away from further exploring its products by Defendants' misdirection and misconduct.

56.     Daily Harvest's attempts to resolve the matter amicably have been unsuccessful. After counsel for Daily Harvest wrote to Defendants, they received a response from Ms. Fogarty's lawyer informing them that he would "pursue sanctions against you personally" and that litigation would be "fun."

57.     Until November 12, 2018, Defendant Savvy Investments refused to remove the privacy service that was protecting the identity of Defendant Ashantiplc and the Doe Defendants who registered www.dailyharvest.com.  Defendant Savvy Investments continued to supply Defendant Ashantiplc and the Doe Defendants with its privacy service, thereby protecting their identities, despite having been informed of the ongoing infringement of Daily Harvest's marks and being aware that Daily Harvest's DAILY HARVEST® trademark is identical to www.dailyharvest.com.

**F.      Daily Harvest Has Suffered Substantial Damages and Will Suffer Irreparable Harm as a Result of Defendants' Misconduct**

58.      Daily Harvest has spent years developing its products, identifying sources for its ingredients, innovating ways to manufacture and market its products, and developing a subscription-based customer following.

59.      Defendant Fogarty has represented that Daily Harvest is losing customers by the thousands, as potential purchasers who have seen Daily Harvest's advertising type in www.dailyharvest.com and inquire about Daily Harvest products.  The loss of these potential customers – both as present and future customers – is irreparable.

60.      It is impossible to quantify Daily Harvest's lost sales or counteract such confusion completely.

61.      As a result of Defendants' conduct, Daily Harvest has effectively lost control of the Daily Harvest brand.

62.      The Daily Harvest brand has suffered tarnishment by being associated with gab.com and donaldjtrump.com. Like many brands, Daily Harvest remains apolitical. By improperly affiliating Daily Harvest with polarizing, right-wing viewpoints, Plaintiff's brand has been cast in a negative light.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Cybersquatting – Violation of Anticybersquatting Consumer Protection Act 15 U.S.C. § 1125(d)(1))**

63.      Daily Harvest hereby incorporates by reference each and every allegation contained above as if set forth herein.

64.      The Anticybersquatting Consumer Protection Act provides that a person shall be liable in a civil action by the owner of a trademark if that person "(i) has a bad faith intent to

profit from that mark," and (ii) "registers, traffics in, or uses a domain name that in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark."

65.     www.dailyharvest.com is identical or confusingly similar to Daily Harvest's DAILY HARVEST® trademark.

66.     Defendants have registered, trafficked in, and used the www.dailyharvest.com domain name.

67.     Defendants have done so with a bad faith intent to profit from the mark by extorting a purchase payment from Daily Harvest.

68.     During the Parties' negotiations, the www.dailyharvest.com domain name pointed to Defendant eNaming.com's website.

69.     After Daily Harvest refused to pay Defendants' asking price, Ms. Fogarty threatened action that would "not be a good look for Daily Harvest."  Soon after, Defendants redirected the domain name to extreme and offensive content intended to tarnish Daily Harvest's brand.  This was done in bad faith with the intention to force Daily Harvest to pay for the domain.

70.     Defendants have no trademark or other intellectual property rights in the www.dailyharvest.com domain name; nor do they use the domain name for any proper purpose.

71.     On November 30, 2017, Defendant Ashantiplc and the Doe Defendants renewed the registration for www.dailyharvest.com with the registrar fabulous.com.

72.     In late 2017, when Sea Wasp acquired fabulous.com, the www.dailyharvest.com domain was re-registered with Sea Wasp.

73.     Effective May 24, 2018, all Sea Wasp/fabulous.com registrants entered into a new registration agreement with "Sea Wasp LLC., DBA as Fabulous."

74.     After Sea Wasp acquired fabulous.com, Savvy Investments became the privacy service associated with and the current registrant of record for www.dailyharvest.com.

75.     Defendants have and continue to hide the domain owner's identity behind the shield of a privacy service.

76.     The DAILY HARVEST® trademark is distinctive as it is fanciful or suggestive and does not describe Daily Harvest's goods or services or their attributes.  The DAILY HARVEST® trademark is also recognized by consumers as an identifier for the Daily Harvest brand.

77.     Defendant Savvy Investments is liable under the Lanham Act because it continues to supply its product to Defendants whom it knows or has reason to know are engaging in infringement of the DAILY HARVEST® trademark.

78.     Defendants' activities as alleged herein have caused, and continue to cause, irreparable injury to Daily Harvest.

79.     Defendants' activities as alleged herein therefore violate 15 U.S.C. § 1125(d)(1).

## SECOND CAUSE OF ACTION
### (Trademark Infringement– Violation of Lanham Act 15 U.S.C. § 1114(1)(a))

80.     Plaintiff Daily Harvest hereby incorporates by reference each and every allegation contained above as if set forth herein.

81.     15 U.S.C. § 1114(1)(a) forbids Defendants to "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."  15. U.S.C. § 1114(1)(a).

82.     Defendants are using the DAILY HARVEST® mark in commerce by incorporating the mark into their website, creating a Daily Harvest profile on gab.com, and reposting content on gab.com under the Daily Harvest name.

83.     Defendants are using the DAILY HARVEST® mark in commerce by earning referral revenue from the www.dailyharvest.com domain, by attempting to sell the www.dailyharvest.com domain, and by interfering with Daily Harvest's commercial activities.

84.     Defendants' use of the DAILY HARVEST® trademark is likely to prevent Internet users from reaching Daily Harvest's website.

85.     Defendants' use of the DAILY HARVEST® trademark has caused and is likely to cause confusion, mistake, or deception among Daily Harvest customers and business partners.

86.     Defendant Savvy Investments is liable under the Lanham Act because it continues to supply its product to Defendants whom it knows or has reason to know are engaging in infringement of the DAILY HARVEST® trademark.

87.     Defendants' activities as alleged herein have caused, and continue to cause, irreparable injury to Daily Harvest.

88.     Defendants' activities as alleged herein therefore violate 15 U.S.C. § 1114(1)(a).

**THIRD CAUSE OF ACTION**
**(Trademark Infringement – Violation of Lanham Act 15 U.S.C. § 1125(a))**

89.     Daily Harvest hereby incorporates by reference each and every allegation contained above as if set forth herein.

90.     15 U.S.C. § 1125(a) holds liable "any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which – (a) is likely to cause

confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (b) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."

91.     Defendants are using the DAILY HARVEST® mark in commerce by incorporating the mark into their website, creating a Daily Harvest profile on gab.com, and reposting content on gab.com under the Daily Harvest name.

92.     Defendants are using the DAILY HARVEST® mark in commerce by earning referral revenue from the www.dailyharvest.com domain, by attempting to sell the www.dailyharvest.com domain, and by interfering with Daily Harvest's commercial activities.

93.     Defendants' use of the DAILY HARVEST® trademark has caused and is likely to cause confusion, mistake, or deception to customers and business partners of Daily Harvest as to the affiliation of Daily Harvest with Defendants' material, gab.com, and www.donaldjtrump.com.

94.     Defendants have promoted their Daily Harvest gab.com profile page with posts that misrepresent the nature, characteristics, qualities, or geographic origin of Defendants' and Daily Harvest's goods, services, or commercial activities.

95.     Defendant Savvy Investments is liable under the Lanham Act because it continues to supply its product to Defendants whom it knows or has reason to know are engaging in infringement of the DAILY HARVEST® trademark.

96.     Defendants' activities as alleged herein have caused, and continue to cause, irreparable injury to Daily Harvest.

97.     Defendants' activities as alleged herein therefore violate 15 U.S.C. § 1125(a).

## FOURTH CAUSE OF ACTION
### (Dilution by Tarnishment – Violation of Lanham Act 15 U.S.C. § 1125(c))

98.     Daily Harvest hereby incorporates by reference each and every allegation contained above as if set forth herein.

99.     15 U.S. C. § 1125(c) provides injunctive relief to the owner of a distinctive, famous mark against "another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by…tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."

100.     The DAILY HARVEST® trademark has become famous and distinctive.

101.     After the DAILY HARVEST® trademark became famous and distinctive, Defendants began using the DAILY HARVEST® mark in commerce by incorporating the mark into their website, creating a Daily Harvest profile on gab.com, and reposting content on gab.com under the Daily Harvest name.

102.     After the DAILY HARVEST® trademark became famous and distinctive, Defendants began using the DAILY HARVEST® mark in commerce by earning referral revenue from the www.dailyharvest.com domain, by attempting to sell the www.dailyharvest.com domain, and by interfering with Daily Harvest's commercial activities.

103.     Defendant Savvy Investments is liable under the Lanham Act because it continues to supply its product to Defendants whom it knows or has reason to know are engaging in infringement of the DAILY HARVEST® trademark.

104.     Defendants' use of the DAILY HARVEST® mark has caused, and is likely to cause tarnishment of the mark.

105.    Defendants' activities as alleged herein therefore violate 15 U.S.C. § 1125(c).

## FIFTH CAUSE OF ACTION
### (Injury to Business Reputation; Dilution – Violation of NY Gen Bus L § 360-L)

106.    Daily Harvest hereby incorporates by reference each and every allegation contained above as if set forth herein.

107.    New York's General Business Law § 360-L provides that "injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."

108.    The DAILY HARVEST® mark is distinctive.

109.    Defendants' use of the DAILY HARVEST® mark has associated Daily Harvest with extremist political messages.

110.    Defendants' use of the DAILY HARVEST® mark has caused injury to the business reputation of Daily Harvest and dilution of the distinctive quality of the DAILY HARVEST® mark.

111.    Defendants' activities as alleged herein therefore violate New York's General Business Law § 360-L.

112.    Defendant Savvy Investments is secondarily liable because it continues to supply its product to Defendants whom it knows or has reason to know are engaging in infringement of the DAILY HARVEST® trademark.

## SIXTH CAUSE OF ACTION
### (Tortious Interference with Business Expectancy)

113.    Daily Harvest hereby incorporates by reference each and every allegation contained above as if set forth herein.

114.   Defendants' conduct, as alleged above, constitutes fraudulent and unfair business practices.

115.   Defendants intentionally and tortuously interfered with business arrangements Daily Harvest would otherwise have with customers seeking the Daily Harvest website by willfully re-registering a domain name that infringed upon the DAILY HARVEST® mark and directing those potential customers to websites that tarnish the Daily Harvest brand.

116.   Defendants' conduct also interferes with Daily Harvest's business and prospective business by violating, *inter alia*, federal and state laws and regulations.

117.   Daily Harvest has lost time, monetary and human resources, the value of its brand, and consumer contractual relationships, and will continue to suffer irreparable harm, as a direct result of Defendants' intentional interferences and misconduct.

### SEVENTH CAUSE OF ACTION
### (Unjust Enrichment – New York Common Law)

118.    Daily Harvest hereby incorporates by reference each and every allegation contained above as if set forth herein.

119.   As a result of the foregoing, Defendants have unjustly enriched themselves through the unauthorized and willful exploitation of Daily Harvest's property and continue to do so.

120.   Defendants have, and will continue to cause, irreparable harm to Daily Harvest in an amount to be determined at trial.

### EIGHTH CAUSE OF ACTION
### (Unfair Competition – New York Common Law)

121.   Daily Harvest hereby incorporates by reference each and every allegation contained above as if set forth herein.

122.     Daily Harvest devoted substantial amounts of labor, skill and money to the development of its business plan and marketing strategy. This includes Daily Harvest's easy-to-navigate website, social media accounts, overall market impression, and business and consumer good will.

123.     Defendants have engaged in an intentional course of conduct for the purposes of harming Daily Harvest's business relationships and consumer-base to gain an unfair commercial advantage over Daily Harvest.

124.     Defendants' willful actions have misappropriated Daily Harvest's efforts to build a successful brand and a loyal client base.

125.     Defendants have, and will continue to cause, irreparable harm to Daily Harvest in an amount to be determined at trial, and are continuing to cause immediate and irreparable harm for which Daily Harvest has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Daily Harvest prays for an Order from the Court and Judgment as follows:

A.     An Order from this Court requiring Defendants and third-party registrars and registries to immediately transfer the www.dailyharvest.com domain to Daily Harvest.

B.     An order enjoining Defendants from making any use of the www.dailyharvest.com domain, including directing the www.dailyharvest.com domain to any website or posting any content on www.dailyharvest.com or otherwise selling, transferring, altering, or otherwise disposing of the www.dailyharvest.com registration.

C.     An order enjoining Defendants to remove any "www.dailyharvest.com" or "Daily Harvest" pages or content that they have posted on gab.com, other social media sites, or online

sites of any kind and not to post any further www.dailyharvest.com or Daily Harvest pages or content on gab.com, other social media sites, or online sites of any kind.

        D.      An order enjoining Defendants to remove any "www.dailyharvest.com" or "Daily Harvest" pages or content that they have posted on gab.com or other websites and barring Defendants from posting any further www.dailyharvest.com or Daily Harvest pages or content on gab.com or other websites.

        E.      An order enjoining Defendants from using the term DAILY HARVEST or any identical or confusingly similar phrase.

        F.      An order enjoining Defendants to desist from representing to any third party that they are "Daily Harvest."

        G.      An award of all monetary damages, both compensatory and punitive, suffered by Daily Harvest as a result of the conduct at issue in this matter.

        H.      An award of all amounts that Defendants have earned from the www.dailyharvest.com website, gab.com, or any other activities using the Daily Harvest name.

        I.      Pre- and post-judgment interest, costs, and attorneys' fees.

        J.      Such other and further relief as the Court deems just and proper.

Dated: November 14, 2018                Respectfully Submitted,

                                        **BRAUNHAGEY & BORDEN LLP**

                                        _/s/ J. Noah Hagey, Esq._
                                        J. Noah Hagey, Esq.
                                        Andrew Levine, Esq.
                                        Jeffrey M. Theodore, Esq. (_pro hac vice_
                                        application forthcoming)
                                        7 Times Square, 27th Floor
                                        New York, NY 10036-6524
                                        Tel. & Fax: (646) 829-9403
                                        Email: hagey@braunhagey.com
                                        Email: levine@braunhagey.com
                                        Email: theodore@braunhagey.com

                                        _Counsel for Plaintiff Daily Harvest, Inc._

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff Daily Harvest, Inc. hereby demands a jury trial of all claims and causes of action triable before a jury.

Dated: November 14, 2018                Respectfully Submitted,

                                        **BRAUNHAGEY & BORDEN LLP**

                                        _/s/ J. Noah Hagey, Esq._
                                        J. Noah Hagey, Esq.
                                        Andrew Levine, Esq.
                                        Jeffrey M. Theodore, Esq. (_pro hac vice_
                                        application forthcoming)
                                        7 Times Square, 27th Floor
                                        New York, NY 10036-6524
                                        Tel. & Fax: (646) 829-9403
                                        Email: hagey@braunhagey.com
                                        Email: levine@braunhagey.com
                                        Email: theodore@braunhagey.com

                                        _Counsel for Plaintiff Daily Harvest, Inc._